**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MOHAMED ABBAS,

                      Plaintiff,

    v.                                    No. 03-CV-476
                                            (GLS/DRH)

SUPT. SENKOWSKI, Superintendent, Clinton Corr. Facility; STEWARD WOELLER, Clinton Corr. Facility; THOMAS EAGEN, Grievance Director; OFFICER LITTLE, Albany Officer; JOSEPH DAVID, Superintendent, Green Corr. Facility; JOSEPH BELARGE, Captain, Green Corr. Facility; ANDREW HARVEY, Hearing Officer; and DONALD SELSKY, Director of S.H.U. programs, Albany,

                      Defendants.

---

**APPEARANCES:**                    **OF COUNSEL:**

MOHAMED ABBAS
Plaintiff Pro Se
No. 96-A-3458
Sullivan Correctional Facility
Post Office Box 116
Fallsburg, New York 12733

HON. ELIOT SPITZER            STEVEN H. SCHWARTZ, ESQ.
Attorney General for the        Assistant Attorney General
   State of New York
Attorney for Defendant
Department of Law
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Mohamed Abbas ("Abbas"), an inmate in the custody of the New York State Department of Correctional Services (DOCS), brings this action pursuant to 42 U.S.C. § 1983. Abbas contends that defendants, eight DOCS employees, violated his constitutional rights in a variety of ways under the Eighth and Fourteenth Amendments while Abbas was incarcerated at two different facilities. Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 50. Abbas opposes the motion. Docket No. 57. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Background

The facts are presented in the light most favorable to Abbas as the non-moving party. See Ertman v. United States, 165 F.3d 204, 206 (2d Cir. 1999).

On April 29, 2000, while incarcerated at Clinton Correctional Facility ("Clinton"), Abbas was charged in a misbehavior report with threats, harassment, and conduct involving the threat of violence. Compl. at 2.[2] After a disciplinary hearing, Abbas was found guilty of threats and conduct involving the threat of violence and was sentenced to sixty days in the Special Housing Unit (SHU),[3] sixty days loss of privileges, and sixty days recommended

---

[2] Under Fed. R. Civ. P. 56(e), the non-moving party must offer evidence in sworn affidavits to oppose a properly supported motion for summary judgment. A verified complaint meets this requirement. See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994). The complaint here was verified and will, therefore, be considered on this motion.

[3] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (2005). Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for

loss of good time. On May 28, 2000, Abbas was transferred to Greene Correctional Facility ("Greene"). Comp. at 2. On appeal, the disciplinary disposition at Clinton was reversed on June 30, 2000 on the ground that the record did not reflect that Abbas received a copy of the written disposition of that proceeding. Id. Abbas was not released from the SHU due to an unrelated pending disciplinary charge. Id. at 3. Abbas wrote to defendants Senkowski, David, Belarge, Eagen, and Bernardi requesting to be released from SHU after he was notified of the reversal and received no response. Id.

On July 7, 2000, Abbas was issued another misbehavior report for harassment for an incident involving medical staff. Id. at 5. After a hearing, Abbas was found guilty and was sentenced to forty-five days in SHU and forty-five days loss of privileges. Id. This disposition was affirmed on administrative appeal. Id. at 6. This action followed.

## II. Discussion

### A. Summary Judgment Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 250

---

administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

(1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). [4]

### B. Personal Involvement

Defendants contend that Abbas has failed to show the personal involvement of defendants Eagen and David. To establish liability under § 1983, a plaintiff must demonstrate that the alleged deprivation of federal rights was committed by a person acting

---

[4] Although proceeding pro se here, Abbas has prior litigation experience. It appears that he has filed at least three other actions in the federal districts of New York since 1997. See U.S. Party/Case Index (visited June 27, 2005).<http://pacer.uspci.uscourts.gov/ cgi-bin/dquery.pl>.

4

under "color of state law." 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48-49 (1988). A prerequisite to establishing this liability is the personal involvement of the defendants in the alleged deprivation. Generally, liability cannot be imposed on a state official for damages under § 1983 solely by the fact that he is a supervisor because respondeat superior liability does not exist under § 1983. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). However, a defendant supervisor is personally involved if he or she has (1) directly participated in the infraction, (2) failed to remedy the wrong after learning of the violation, (3) created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue, or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986).

Here, Abbas fails to show the personal involvement of either Eagen or David. The only allegation in the complaint as to Eagen is that Abbas did not receive a response to a complaint he sent to Eagen. Compl. at 3. This is insufficient to establish personal involvement and there is no other showing that Eagen knew of or directly participated in any alleged violation. Abbas also alleges that he wrote to David, who then sent a "false response." This conclusory assertion also is insufficient to establish the personal involvement of David as Abbas fails to identify this response any further or to show that David was aware of or participated in any alleged constitutional violation.

Therefore, defendants' motion on this ground should be granted as to all claims against Eagen and David.

5

## C. Qualified Immunity

Defendants contend that their actions during Abbas' disciplinary hearings were objectively reasonable and that they are, therefore, entitled to qualified immunity. Qualified immunity protects government officials from civil liability if "it was objectively reasonable for them to believe their acts did not violate . . ." clearly established rights. Brown v. City of Oneonta, 106 F.3d 1125, 1130-31 (2d Cir. 1997); see also Anderson v. Creighton, 483 U.S. 635 (1987).  In determining whether a right is clearly established, a court should consider "(1) whether the right in question was defined with 'reasonable specificity,' (2) whether the decisional law of the Supreme Court and the [Second Circuit] support the existence of the right in question, and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir. 1991).  This does not require that "the very action in question [be] previously . . . held unlawful," Mitchell v. Forsyth, 472 U.S. 511, 535 n.12 (1985), but merely that the "unlawfulness must be apparent." Anderson, 483 U.S. at 639.

Here, there exists no question that every prisoner has clearly established due process rights before being confined to segregated housing. The basic procedural requirements for prison disciplinary hearings mandate twenty-four hour advance written notice of the charges, assistance in the preparation of a defense, the right to call witnesses and present documentary evidence, a fair and impartial hearing officer, a written statement of the evidence upon which the hearing officer relied, and the reasons for the disciplinary sanction. Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974).

On May 11, 2000, Abbas was found guilty after a disciplinary hearing and this disposition was reversed solely on the ground that the record failed to verify that Abbas

6

received a copy of the disposition. Defs. Statement of Material Facts (Docket No. 50, Ex. 1) at Exs. A-C. During the hearing, Abbas would not speak English or indicate that he understood English but asked for the assistance or a translator. The hearing officer therefore had Abbas removed and conducted the remainder of the hearing without Abbas present. Id., Ex. A. at 14-15. Sergeant Douglas testified as to the contents of the misbehavior report and the hearing was concluded. Id. While a written disposition of the hearing officer's findings was prepared, the record did not reflect that Abbas received a copy of the disposition and, therefore, on June 30, 2000, the disposition was reversed. Defs. Statement of Material Facts Ex. A at 3-4.

There thus exists a question of material fact as to whether defendants' actions were objectively reasonable when the hearing was conducted without Abbas present and that the record did not reflect that Abbas received a written disposition of the charges. Abbas had a clearly established right to an opportunity to speak in his own defense and to receive a written statement of the evidence. It is not clear from the record whether Abbas' rights were violated or that it was reasonable for defendants to believe that their actions were reasonable in light of the procedural requirements for prison disciplinary hearings as described in Wolff, 418 U.S. at 563-66. Therefore, there is a question of fact as to whether defendants are entitled to qualified immunity.

Accordingly, it is recommended that defendants' motion on this ground be denied as to Abbas' procedural due process claims.

7

## D. Due Process

Defendants contend that Abbas did not have a protected liberty interest. As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To determine whether an inmate possessed a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement was atypical and significant in relation to ordinary prison life. Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

If a plaintiff was confined for over 100 days, "development of a detailed record" pertaining to the conditions of the confinement relative to ordinary prison conditions is required. Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004); Colon v. Howard, 215 F.3d 227, 232 (2d Cir. 2000). Relevant factors to consider are the length and actual conditions of confinement. Palmer, 365 F.3d at 64.  Factual disputes over prison conditions may not be resolved on summary judgment, but where conditions are undisputed, the Sandin issue should be resolved by the court as a matter of law.  Colon, 215 F.3d at 230-31; Palmer, 364 F.3d at 65. A prisoner has no actionable due process claim if similar deprivations are endured by other prisoners "simply as a consequence of the ordinary administration of the prison." Welch v. Bartlett, 196 F.3d 389, 394 (2d Cir. 1999).

Here, Abbas was sentenced to sixty days on the April 29, 2000 misbehavior report

8

and forty-five days on the July 7, 2000 misbehavior report.[5] Therefore, the entire period of Abbas' confinement in the SHU was 113 days from April 29, 2000 until August 20, 2000. Viewing the evidence in the light most favorable to Abas, the duration of Abbas' confinement alone was not sufficiently brief to defeat his claim and the conditions of that confinement must be examined.

Defendants further contend that Abbas' SHU confinement was not an "atypical and significant" hardship in comparison to the ordinary incidents of prison life. Defendants submit that in comparison with the conditions of several other types of confinement in New York correctional facilities, the conditions in SHU did not constitute an atypical or significant deprivation for Abbas when compared to the ordinary incidents of prison life.

Abbas alleges that while confined in SHU, he was deprived of medical care and a special diet, was unable to file any complaints, was confined twenty-four hours per day, and was not allowed exercise time or one shower per week.[6] Compl. at 3-5; Resp. in Opp'n (Docket No. 57) at ¶ 119. In addition, Abbas contends that from July to August 2000, defendants intentionally shut the ventilation system down causing him to suffer with asthma and breathing difficulties, that he was denied the right to practice his religion, and that he was restrained for the entire period outside the SHU. Compl. at 5; Resp. in Opp'n at ¶¶ 110-11, 119, 125. Abbas also contends that he was denied access to the law library and

---

[5] "[S]eparate SHU sentences 'should be aggregated for purposes of the Sandin inquiry' when they constitute a sustained period of confinement." Giano v. Selsky, 238 F.3d 223, 226 (2d Cir. 2001) (quoting Sims v. Artuz, 230 F.3d 14, 23-24 (2d Cir. 2000)).

[6] Abbas' allegations that he was denied medical care, a special diet, and the right to file grievances were refuted by defendants' evidence that these rights were not in fact denied him. See subsections E & F infra.

therefore lost his criminal appeal. Compl. at 5.

Defendants submit statistics to demonstrate that Abbas' 113 day sentence was not atypical and significant and was in fact less than the normal SHU sentences. Selsky Aff. (Docket No. 50, Ex. 6) at ¶¶ 23-24, 28-29; Exs. G & H. Defendants submit evidence that the conditions imposed in SHU for disciplinary segregation "mirrored those conditions imposed upon inmates in administrative segregation and protective custody." Sandin, 515 U.S. at 486. Defendants contend that the duration of Abbas' SHU confinement was not significantly onerous compared with Abbas' total sentence of imprisonment.

Defendants, however, have failed to proffer a sufficient record to determine whether the duration of Abbas' particular confinement in SHU for 113 days was atypical or significant or that the general population was subjected to those conditions alleged by Abbas. See Ortiz v. McBride, 380 F.3d 649, 654-55 (2d Cir. 2004) (allegations of unsanitary conditions and denial of showers and personal items during ninety day SHU confinement sufficient to survive motion to dismiss); Palmer, 364 F.3d at 66 (seventy days in SHU a deprivation of liberty where there were allegations of deprivation of personal property, restraints while escorted outside of cell, and no opportunity to communicate with family); Sims, 230 F.3d at 23-24; (aggregate 305 day confinement with allegations of full restraints, no exercise without restraints, and deprivation of normal meals was sufficient to survive motion for summary judgment); Welch, 196 F.3d at 394 (question of material fact as to ninety days in confinement). Defendants have presented no evidence with respect to the specific conditions Abbas was subjected to during his confinement in SHU. Abbas contends that he was subjected to specific conditions not typically endured by other SHU or general population inmates and has therefore raised a question of material fact as to

10

whether he had a protected liberty interest.

Thus, it is recommended that defendants' motion for summary judgment on the ground that Abbas did not have a protected liberty interest in being free from SHU confinement be denied.[7]

### E. Exhaustion

Defendants contend that Abbas has failed to exhaust his administrative remedies regarding his clam that he was denied a high fiber diet while confined to SHU at Greene. Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing a § 1983 lawsuit. Porter v. Nussle, 534 U.S. 516, 524 (2002). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. Id. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). Conditions of confinement include deprivations of "exercise, medical care, adequate food and shelter, and other conditions that, if improperly imposed, could violate the Constitution." Id. at 28. The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

DOCS has instituted an inmate grievance program which provides inmates with a method of resolving grievances. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.1 (2004). A grievance is defined therein as a "complaint about the substance or application of any

---

[7] It is noted that defendants' motion on this claim is limited to the Sandin issue and does not seek summary judgment on the merits of the claim or on any other ground.

11

written or unwritten policy, regulation, procedure or rule of [DOCS] or any of its program units, or the lack of a policy, regulation, procedure or rule." Id. at § 701.2(a). An inmate must first bring his or her grievance to the Inmate Grievance Review Committee (IGRC). Id. at § 701.7(a). If denied by IGRC, the inmate may appeal to the facility Superintendent. Id. at § 701.7(b). If the Superintendent denies relief, the inmate may take a final appeal to the Central Office Review Committee (CORC). Id. at § 701.7(c). Thus, if a plaintiff has failed to follow each step, he has failed to exhaust his administrative remedies as required by § 1997e(a).

However, a three-part inquiry is appropriate in cases where a prisoner plausibly seeks to counter a contention that he or she has not exhausted available administrative remedies under § 1997e(a). Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). First, a court must determine whether the administrative remedies were actually "available" to the petitioner. Id. (citing Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004)). "Available" means more than the mere presence of a grievance system but also that the system is functionally available to the prisoner. Hemphill, 380 F.3d at 686-87. That test is objective so that a "similarly situated individual of ordinary firmness" would have deemed it available. Id. at 688 (citing Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).

The second part of the inquiry requires a court to ask whether the defendant's own actions inhibited exhaustion so that the defendant are estopped from raising it as a defense. Hemphill, 380 F.3d at 686 (citing Ziemba v. Wezner, 336 F.3d 161,163 (2d Cir. 2004)). Finally, if the administrative remedies were available and the defendant is not estopped, a court should also consider whether any "special circumstances" were plausibly

12

alleged to justify the petitioner's failure to comply with the administrative requirements. Hemphill, 380 F.3d at 686; Giano v. Goord, 380 F.3d 670 (2d Cir. 2004( (citing Berry v. Kerik, 336 F.3d 85, 87-88 (2d Cir. 2004)).  In both Hemphill and Giano, the court held that a reasonable interpretation of DOCS regulations may justify an inmate's failure to follow procedural rules to the letter.  Hemphill, 380 F.3d at 690; Giano, 380 F.3d at 676. Additionally, if an administrative remedy is still available, a court may dismiss the case without prejudice, but otherwise the plaintiff may proceed with the suit. Id.

Here, the only grievances in the record concerning Abbas' special diet request were filed after Abbas was transferred from Greene and after the incidents complained of in this lawsuit took place. Defs. Statement of Material Facts at Ex. M. The first grievance relating to a high fiber diet was filed on November 19, 2001, while Abbas was confined at Elmira Correctional Facility. Id.  There is no evidence of any grievance filed at Greene relating to Abbas' request for a special diet.  While Abbas alleges in his opposition papers that he was unable to file grievances while confined in SHU at Greene, the record reflects that Abbas did in fact file grievances. Id. Therefore, defendants' motion on this ground should be granted as to Abbas' medical care claim alleging a failure to be provided with a high fiber diet.

### F. Medical Care

Abbas contends that he was denied proper medical care in violation of the Eighth Amendment. Defendants content that Abbas fails to show a violation of his Eighth Amendment rights.

13

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege deliberate indifference to a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). More than negligence is required but less than "conduct undertaken for the purpose of causing harm." Hathaway, 37 F.3d at 66. The test for a § 1983 claim is twofold. First, the prisoner must show that there is a sufficiently serious medical need. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); Hathaway, 37 F.3d at 66. Second, the prisoner must demonstrate that the prison official showed deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm. Id. Prison officials "who actually knew of the substantial risk to inmate health and safety may be found free from liability if they reasonably responded to the risk, even if the harm ultimately was not avoided." Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (citing Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)). An injury that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition is serious. Chance, 143 F.3d at 702-03. The ailment may be considered serious if the prisoner has multiple complaints of pain. Williams v. M.C.C. Inst., No. 99-Civ.-5352, 1999 WL 179604, at *5 (S.D.N.Y. Mar. 31, 1999).

14

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs. Chance, 143 F.3d at 702. Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment is adequate. Id. at 703; Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990). Allegations of negligent malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness. Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998); Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Here, Abbas was in fact treated frequently while at Clinton and Greene. Defs. Statement of Material Facts at Ex. E. Abbas was treated for back and knee problems, asthma, and gastrointestinal problems. X-rays, a magnetic resonance image (MRI), and blood tests were performed, Abbas was issued a back brace, and was prescribed several medications for his impairments. Id. In addition, Abbas was approved for a special diet which was implemented. Id. at Ex. F. Abbas had surgery July 2, 2002 to repair an anal fissure. Id. at Ex. F. These actions by defendants show that they did not exhibit deliberate indifference towards Abbas' medical needs.

In addition, Abbas failed to appear for appointments on several occasions and refused the special diet meals provided for him. Id. at Ex. H. While Abbas contends that defendants delayed surgery, the surgery was successful and Abbas was being treated conservatively for this particular impairment. Abbas' contention that because he was deprived of his special diet, his anal fissure required surgery is without merit as Abbas was in fact provided with a special diet. Id. at Exs. E-H.

15

Therefore, defendants' motion on this ground should be granted as to Abbas' Eighth Amendment medical care claim.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that defendants' motion for summary judgment (Docket No. 50) be:

1. **GRANTED** as to Abbas' claims against defendants Eagen and David;

2. **GRANTED** as to Abbas' medical indifference claims; and

3. **DENIED** as to Abba's due process claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Secretary of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 9, 2005
       Albany, New York

*David R. Homer*
United States Magistrate Judge