**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MOHAMED ABBAS,**

                              **Plaintiff,**

          **v.**                                        **9:03-CV-0476**
                                                        **(GLS/DRH)**

**SUPT. SENKOWSKI, Superintendent**
**Clinton Corr. Facility; STEWARD WOELLER,**
**Clinton Corr. Facility; T. EAGAN, Grievance**
**Director; OFFICER LITTLE, Albany Officer;**
**JOSEPH DAVID, Superintendent Greene Corr.**
**Facility; CAP. JOSEPH BELARGE, Greene**
**Corr. Facility; ANDREW HARVEY, Hearing**
**Officer; DONALD SELSKY, Director of**
**S.H.U. Programs, Albany,**

                              **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFF:**

MOHAMED ABBAS
Plaintiff, *Pro se*
96-A-3458
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004

**FOR THE DEFENDANTS:**

HON. ELIOT J. SPITZER          Steven H. Schwartz
New York Attorney General      Assistant Attorney General
The Capitol
Albany, New York 12224

**Gary L. Sharpe**
**U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Pending are the defendants' objections to Magistrate Judge David Homer's Report-Recommendation. *See Report-Recommendation, Dkt. No. 58.* The court reviews specific objections pursuant to *de novo* standard, and unspecific objections pursuant to a clearly erroneous standard. Upon careful consideration of the arguments, the relevant parts of the record, and the applicable law, the court adopts the Report-Recommendation in its entirety.[1]

## II. Procedural History

Abbas alleges that his Eighth and Fourteenth Amendment rights were violated pursuant to 42 U.S.C. § 1983. *See Compl., Dkt. No. 1.* On September 30, 2004, the defendants filed a motion for summary judgment and Abbas responded. *See Dkt. Nos. 50, 57.* On  September 9, 2005,

---

[1]The Clerk is directed to append Judge Homer's Report-Recommendation to this decision, and familiarity is presumed.

Judge Homer issued a report recommending that the defendants' motion be denied in part, and granted in part.  *See Report-Recommendation, Dkt. No. 58.*  Judge Homer specifically found that Abbas failed to show personal involvement on behalf of defendants Eagen or David, and thereby recommended dismissal of all claims asserted against those two defendants.  *See id.* at 5.  Judge Homer also found that Abbas failed to exhaust his administrative remedies with respect to his Eighth Amendment medical care claim,[2] but ultimately, that the claim was meritless.  *See id.* at 13, 16.  Accordingly, Judge Homer recommended granting defendants' motion as to Abbas' Eighth Amendment medical care claim.  *Id.*

Judge Homer also found that questions of fact exist regarding whether defendants are entitled to qualified immunity and whether Abbas had a protected liberty interest in being free from SHU confinement.  *See id.* at 7, 11.  As a result, he recommended denying defendants' motion as to Abbas' procedural due process claims.  *See id.* at 7.  Currently pending are the defendants' objections.  *See Dkt. No. 59.*[3]

---

[2]Abbas contends that defendants violated his Eighth Amendment rights by failing to provide him with a high fiber diet.

[3]Abbas informed the court that he did not wish to object to the report.  *See Dkt. No. 63.*

3

## III. <u>Discussion</u>

### A. <u>Standard of Review</u>

By statute and rule, district courts are authorized to refer prisoner civil rights case to magistrate judges for proposed findings and recommendations.  *See* 28 U.S.C. § 636(b)(1)(A), (B); N.D.N.Y. R. 72.3(c); Gen. Order No. 12, § D(1)(G).

When a report and recommendation is filed, the parties have ten (10) days from receipt of the report to file specific, written objections to proposed findings and recommendations, and ten (10) days from the receipt of adversary objections to file responses.  *See* 28 U.S.C. § 636(b)(1)(C); F<small>ED</small>. R. C<small>IV</small>. P. 72(b); N.D.N.Y. R. 72.1(c).  The local rules further require that the objections must specify the findings and recommendations which are the subject of the objections, and the substantive basis for these objections.  *See* N.D.N.Y. R. 72.1(c).

The district court must review *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved by compliance with the specificity requirement.  *See* 28 U.S.C. § 636(b)(1)(C); F<small>ED</small>. R. C<small>IV</small>. P. 72(b); N.D.N.Y. R. 72.1(c).  After review, the

4

district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge ... [and] may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).

If a party fails to object in a timely manner, it procedurally defaults and is not entitled to judicial review. *See Almonte v. New York State Div. of Parole*, No. 04-CV-484, 2006 WL 149049, at *3 (N.D.N.Y. Jan. 18, 2006) (citation omitted). "Although the doctrine of procedural default developed as a circuit appellate rule, it applies in the district courts as long as parties, including those appearing *pro se*, receive clear notice of the consequences of their failure to properly object." *Id*; *see also Thomas v. Arn*, 474 U.S. 140, 149 & n.7 (1985). "[T]he notice requirement is satisfied if the report at least states that the failure to object will preclude appellate review[.]" *Almonte*, 2006 WL 149049, at *3 (citation omitted).[4]

Although failure to object or timely object constitutes procedural default, lack of specificity also gives rise to default. *See id.*, at *4. The

---

[4]The following statement accompanies all magistrates' reports issued in this district: "[P]ursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the [c]lerk of [c]ourt. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**" *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e); *see Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1983); *Small v. Sec'y of Health & Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

local rule requires that objections address specific findings and
conclusions.  *See id.*  Therefore, a party that limits its specific objections to
a part of a report's findings or recommendations procedurally defaults as to
the remainder.  *See id.*  Frivolous or conclusory objections also fail to
satisfy the specificity requirement.  *See id.*  Furthermore, mere
resubmission of the same papers and arguments as submitted to the
magistrate judge fails to comply with the specificity requirement and also
results in default.  *See id.*

The district court must review *de novo* those portions of the
magistrate judge's findings and recommendations that have been properly
preserved by compliance with the specificity requirement.  *See id.,* at *5;
*see also* 28 U.S.C. § 636(b)(1)(C); Fᴇᴅ. R. Cɪᴠ. P. 72(b); N.D.N.Y. R.
72.1(c).[5]  "*De novo* review requires that the court 'give fresh consideration

─────────────────────

[5]The decision to use procedural default is in the discretion of the district court.  *See
Almonte,* 2006 WL 149049, at *4 (citation omitted).  "Such discretion is based on, among other
factors, whether the defaulted argument has substantial merit or, put otherwise, whether the
magistrate judge committed plain error in ruling against the defaulted party."  *Id.* (citation
omitted).  "As the Supreme Court has observed:

> '[T]he district court...must exercise supervision over the magistrate.  Even ... [if a
> procedural default rule permits a] ... district judge ... to refuse to review a magistrate's
> report absent timely objection ... [t]he rule merely establishes a procedural default that
> has no effect on the ... court's jurisdiction.  The district judge has jurisdiction over the
> case at all times.  He retains full authority to decide whether to refer a case to the
> magistrate, to review the magistrate's report, and to enter judgment.  Any party that
> desires plenary consideration need only ask.  Moreover, while the statute does not
> require the judge to review an issue *de novo* if no objections are filed, it does not

to those issues to which specific objections have been made.'  It will examine the entire record, and make an independent assessment of the magistrate judge's factual and legal conclusions."  *Almonte*, 2006 WL 149049, at *5 (citation omitted).  After review, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge...[and] may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C); Fᴇᴅ. R. Cɪᴠ. P. 72(b); *see also Almonte*, 2006 WL 149049, at *3 (citations omitted).

"The more complex question arises when a party procedurally defaults, the court is not statutorily mandated to conduct *de novo* review nor does it elect to do so, but it concludes that some review is in order nonetheless."  *Almonte*, 2006 WL 149049, at *5.  Under these circumstances, it is within the court's discretion to elect an appropriate review standard.  *See id.*

In the case of procedural default, "28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure are both silent on the review

---

preclude further review, *sua sponte* or at the request of a party, under a *de novo* or any other standard.'"  *Id.* (quoting *Thomas v. Arn*, 474 U.S. 140, 154 (1985)).

standard[.]..." *Id.* "[D]istrict courts have applied standards with varying names and definitions." *Id.*, at *6. "[S]ome adopt the 'clearly erroneous' standard that is articulated in the statute and federal rule governing review of a magistrate judge's nondispositive orders, and referenced in the 1983 Advisory Committee Note."[6] *Id.* (citations omitted). "Given the definition typically assigned to 'clearly erroneous,' the courts review a report to determine whether the findings are against the clear weight of the evidence, or whether the recommendations cause the court to definitely and firmly conclude that a mistake has been committed." *Id.* "Other courts have adopted a 'contrary to law' standard which means that the report fails to apply, or misapplies, relevant statutes, case law, or rules of procedure." *Id.* (citations omitted). "When excusing procedural default in the interests of justice, the Circuit has reviewed the underlying decision or report for 'plain error.'" *Id.* (citations omitted). "Plain error is one that is clear or obvious and affects substantial rights." *Id.* (citations omitted).

─────────────────

[6]"The Rule 72(b) Advisory Committee Note suggests that the court will review for 'clear error,' stating:
        'When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" FED. R. CIV. P. 72(b) advisory committee's note (1983) (citations omitted); *see also Almonte*, 2006 WL 149049, at *5 (citations omitted).

"Mindful that district courts retain jurisdictional authority over all dispositive issues, this court routinely reviews reports before entering final judgment whether objections are registered or not."  *See Almonte*, 2006 WL 149049, at *6.  When the court does so, however, it is aware that the reports are generated by magistrate judges with extraordinary professional and judicial experience."  *Id.*  "Accordingly, when required by statute or rule or when the court's routine review so dictates, the court will make a *de novo* determination of findings and recommendations."  *Id.*  "Absent *de novo* review, the court will apply a 'clearly erroneous' standard, and defines that phrase as follows: a report is clearly erroneous if the court determines that there is a mistake of fact or law which is obvious and affects substantial rights."  *Id.*  "Furthermore, the court will routinely identify issues which have been procedurally defaulted, and articulate the standard of review applied to all issues."  *Id.*

**B.  Objections**

    **1.    Qualified Immunity**

Defendants made a series of objections to Judge Homer's findings regarding both the first and second disciplinary hearings.  As to the first

hearing, defendants dispute that Abbas was prejudiced by not receiving

written notice of the charges filed against him, noting that the charges were

dismissed and his record expunged.  As a result, the defendants maintain

that they are entitled to qualified immunity.  The Second Circuit has held:

> [A]n inmate is entitled to advance written notice of the charges
> against him; a hearing affording him a reasonable opportunity
> to call witnesses and present documentary evidence; a fair and
> impartial hearing officer; and a written statement of the
> disposition, including the evidence relied upon and the reasons
> for the disciplinary actions taken.

*Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*,

418 U.S. 539, 563-67 (1974)).

### a. <u>First Hearing</u>

Noting that the record did not reflect that Abbas received notice of the

charges, Judge Homer found that questions of fact exist regarding whether

defendants' actions surrounding the May 8, 2000 disciplinary hearing were

objectively reasonable.  In rejecting defendants' argument that Abbas was

not prejudiced by their actions, Judge Homer found that Abbas did not

participate in the disciplinary hearing because he was removed from the

hearing after requesting an interpreter.  Judge Homer concluded that

factual questions exist regarding whether defendants' actions were

objectively reasonable and that the record must be developed.  The court

concurs with Judge Homer's analysis and **DENIES** qualified immunity as to

the first hearing.



### b. Second Hearing

Defendants also contend[7] that Judge Homer failed to address their

qualified immunity argument in regard to the second disciplinary hearing.

*See Def. Objs. p. 2; Dkt. No. 59.*  Qualified immunity protects government

officials from civil liability if "it was objectively reasonable for them to

believe their acts did not violate... [clearly established constitutional rights]."

*Provost v. City of Newburgh,* 262 F.3d 146, 160 (2d Cir. 2001) (citation

omitted).  In determining whether a right was established, "the court should

---

[7]Defendants also maintain that Judge Homer should have taken judicial notice of the fact that Abbas' letters written to prison officials in 2000 demonstrate that his proficiency in English belies his claims that he required an interpreter.  *See Defs. Objs. p. 3, Dkt. No. 59.*

Under Rule 201(b) of the Federal Rules of Evidence, a "court may take judicial notice of facts that are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'"  *Island Software & Computer Serv. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (citing Fed. R. Evid. 201(b)).  Given that the court is reviewing a motion for summary judgment, it interprets the facts in the light most favorable to the non-movant.  Moreover, a request that the court take judicial notice is an inappropriate vehicle for determining whether Abbas was proficient enough in English so as not to require an interpreter.  Accordingly, Judge Homer correctly declined to take judicial notice of this fact.

consider three factors: 1) whether the right in question was defined with

'reasonable specificity,' 2) whether the decisional law of the Supreme Court

and the [Second Circuit] support the existence of the right in question, and

3) whether under preexisting law a reasonable defendant official would

have understood that his or her acts were unlawful." *Jermosen v. Smith*,

945 F.2d 547, 550 (2d Cir. 1991) (citation omitted).

Here, defendants argue that the hearing officer believed that Abbas

was proficient enough in English to participate in the hearing without the

assistance of a translator. *See Def. Objections*, *p. 3*; *Dkt. No. 59.*  While

the defendants concede that it is unclear whether or not Abbas received a

written disposition of the charges against him prior to the hearing, they

contend this is irrelevant because he received one afterwards.  *See id.*

Finally, the defendants rely on the evidence of Abbas' guilty conduct

underlying the misbehavior report as support for their contention that the

defendants should be entitled to qualified immunity.  However, questions of

fact remain as to whether it was reasonable for defendants to believe that

their actions were reasonable in light of the procedural requirements set

forth in *Wolff*.  Therefore, for the same reasons Judge Homer denied

qualified immunity as to the first hearing, namely that issues of fact

12

remained, qualified immunity for the second hearing is denied.

Accordingly, defendants' motion for summary judgment is **DENIED** as to

Abbas' due process claims regarding both hearings.

### 2. Aggregation of Periods of SHU Confinement

Defendants also object to Judge Homer's treatment of Abbas' periods

of confinement in SHU.  Judge Homer aggregated the two periods of

confinement in SHU in reliance on *Giano v. Selsky*, 238 F.3d 223, 226 (2d

Cir. 2001).  Defendants contend that Abbas' periods of SHU confinement

should not have been aggregated because Abbas was "found guilty of two

separate acts of misbehavior at two different facilities, over two months

apart."  *Defs. Objs. p. 5; Dkt. No. 59.*

A prisoner's due process claim in connection with prison disciplinary

hearings resulting in segregated confinement or loss of privileges must

demonstrate that the deprivation complained of "impose[d] atypical and

significant hardship on [him] in relation to the ordinary incidents of prison

life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  "[T]he duration of SHU

confinement is a distinct factor bearing on atypicality and must be carefully

considered."  *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000).  Courts

13

have held confinement in SHU for a period of 305 days satisfies the *Sandin* standard.  *See id.* at 232.  However, confinement within 101 to 305 days requires that district courts develop a detailed factual record.  *See id.*

Moreover, the Second Circuit has indicated that district courts should consider aggregating periods of SHU confinements for purposes of *Sandin*. *See Giano v. Selsky*, 238 F.3d 223, 226 (2d Cir. 2001).  In *Giano*, the Second Circuit held that "separate SHU sentences should be aggregated for purposes of the *Sandin* inquiry when they constitute a sustained period of confinement."  *Id.*

Here, Abbas was sentenced to sixty days on April 29, 2000, while incarcerated at Clinton Correctional Facility.  On May 28, 2000, Abbas was transferred to Greene Correctional Facility, and he was issued another misbehavior report on July 7.  After being found guilty of the counts in that report, Abbas was sentenced to forty-five days in SHU.  Judge Homer aggregated the total amount of confinement, concluding that Abbas was sentenced to 113 days of confinement from April 29, 2000 to August 20.

Having viewed the evidence in the light most favorable to Abbas, Judge Homer explained that the duration of Abbas' confinement alone was not sufficiently brief to defeat his claim.  Additionally, Judge Homer

14

concluded that the court must examine the conditions of confinement to determine whether Abbas' rights were violated.  The court agrees with Judge Homer's analysis and defendants' motion for summary judgment is **DENIED**.

 **WHEREFORE**, for the foregoing reasons, it is hereby

 **ORDERED** that defendants' motion for summary judgment (*Dkt. No. 50*) be **GRANTED** in part, and **DENIED** as to Abbas' Fourteenth Amendment due process claims.

 **ORDERED** that the Clerk of the Court provide copies of this Order to the parties.

**IT IS SO ORDERED.**

July11, 2006
Albany, New York

Gary L. Sharpe
U.S. District Judge

15